UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

EDWAR YHOSMAN GARCIA LEAL )
)
Petitioner, )
)
v. ) No. 1:26 CV 157 RWS
)
)
GARY STOLZER, Warden of )
Ste. Genevieve County Detention )
Center )
)
Respondent. )

## MEMORANDUM AND ORDER

Petitioner Edwar Yhosman Garcia Leal filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2241, arguing that he has been unlawfully detained at the Ste.

Genevieve County Detention Center without a bond hearing in violation of his Fifth

Amendment due process rights.  He argues that he is entitled to release from detention or,

alternatively, a bond hearing to determine whether continued detention is justified.

Petitioner contends that the denial of an individualized determination of bond

violates the Fifth Amendment's Due Process Clause.  He does not advance a statutory

argument. [1]  The Government filed its opposition to the petition on July 20, 2026, and on

---

[1]     In *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), a divided panel of the Eighth
Circuit held, as a matter of statutory interpretation, that unadmitted noncitizens already
present inside the United States are not entitled to a statutory bond hearing under 8 U.S.C.
§ 1226(a) and instead may be subject to mandatory detention without bond under 8 U.S.C.
§ 1225(b)(2)(A).  *Avila v. Bondi*, 170 F.4th 1128, 1136 (8th Cir. 2026).

July 21, 2026, Petitioner filed a reply.  Because the Court agrees that Petitioner's continued detention without an individualized bond hearing violates the Due Process Clause, the Court will grant the petition.

## BACKGROUND

Petitioner is a citizen of Venezuela who entered the United States without inspection in November 2021.  Petitioner was detained by immigration authorities upon arrival and then released a few days later.  Petitioner has complied with the conditions of his release and has no criminal history.  He currently resides in Illinois with his family.

In June 2026, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") and was transferred to Ste. Genevieve County Detention Center, where he is currently detained.  He has a pending asylum application.

The Government contends that Petitioner is being properly detained without a bond hearing under 8 U.S.C. § 1225(b)(2)(A), as an unadmitted noncitizen, and that Petitioner's due process claims fail under binding Eighth Circuit and Supreme Court precedent.  The Government's Response does not contest any of the facts provided in the Petition.

## DISCUSSION

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdiction."  28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  A district

court may grant a writ of habeas corpus if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).[2]

As noted above, Petitioner raises four grounds for relief. Because the Court concludes that Petitioner is entitled to relief, in part, based on his claim under the Due Process Clause, the Court need not reach Petitioner's alternative arguments.

**Mandatory Detention**

According to the Government, Petitioner is being detained under § 1225(b)(2)(A). For nearly three decades, the prevailing interpretation of § 1225(b)(2)(A) counseled that unadmitted noncitizens found in the United States were eligible for bond during the pendency of immigration proceedings. Only recently, the Department of Homeland Security ("DHS") has newly interpreted this section to permit mandatory, indefinite detention of unadmitted noncitizens already present inside the United States without even the possibility of bond, rendering a bond hearing superfluous. *See Avila*, 170 F.4th 1128 (8th Cir. 2026).

The Government contends that the Eighth Circuit's decision in *Avila*, which is binding on this Court, forecloses any challenge to the Government's statutory authority to detain Petitioner without a bond hearing.[3] However, *Avila* does not foreclose Petitioner

---

[2]     Although Petitioner does not explain whether administrative exhaustion occurred, the Government notes that exhaustion would be futile here because the current dispute "presents a purely legal question requiring no further factual or procedural development." *See* Govt. Resp., ECF No. 10 at 4 n.5 (citing *Cutiopala v. Noem*, 2026 WL 113567 at *1 (E.D. Mo. Jan. 15, 2026) (Lanahan, J.)).

[3]     While the Court is bound by the Eighth Circuit's ruling, the Court notes that the legal issue addressed in *Avila* has not been addressed by the Supreme Court, and at least four other circuits have disagreed with the Eighth Circuit's holding. *See Barbosa da Cunha*

from *challenging his detention on due process grounds.* *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting). And the Court agrees that Petitioner's detention without a bond hearing violates the Due Process Clause.

**Due Process**

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). As the Government concedes, the Fifth Amendment applies equally to citizens and noncitizens who have "enter[ed] the country." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "'whether their presence here is lawful, unlawful, temporary, or permanent.'"[4] *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Cir. 2026) (quoting *Zadvydas v. Davis*, 533 U.S. at 693).

---

*v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) (holding that finding that § 1226(a)'s permissive detention scheme, rather than § 1225(b)(2)(A)'s mandatory detention scheme, governs the detention of noncitizens "who are already present in the United States and are determined not to be a flight risk or danger to the community . . . while their removal proceedings are pending."); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026) (same); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026) (same); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709, at *16 (10th Cir. June 30, 2026) (same); *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026); *but see Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) (adopting the same position as the Eighth Circuit in *Avila*).

[4] Importantly, the habeas petition here seeks only release from detention or, alternatively, a bond hearing to determine whether continued detention is justified. Petitioner does not challenge his removability, thus distinguishing this case from *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), in which the Supreme Court rejected a habeas petition challenging an order for expedited removal. Although the Government does not cite or rely on *Thuraissigiam*, the Court recognizes its

"[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore v. Kim*, 538 U.S. 510, 528 (2003). The Government enjoys more flexibility when dealing with noncitizens and "may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. However, while detention during removal proceedings may be a constitutionally permissible part of the deportation process, *Demore*, 538 U.S. at 531, "the government's ability to detain noncitizens is not limitless." *Lopez-Campos*, 175 F.4th at 732. Detention "should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community. *Id.* (citing *Zadvydas*, 533 U.S. at 690). "Where immigration detention becomes needlessly prolonged and appears to no longer effectuate the regulatory goals of civil immigration detention, courts routinely hold that the Due Process Clause requires an individualized bond hearing to justify a noncitizen's continued detention." *Lopez-Campos*, 175 F.4th at 732–33 (collecting cases).

---

holding that noncitizens "at the threshold of initial entry"—or, as in the case of the *Thuraissigiam* petitioner, stopped just 25 yards after crossing the border—have "only those rights regarding admission that Congress has provided by statute." 591 U.S. at 107, 140. But the due process right discussed by the Supreme Court in *Thuraissigiam* was the right of a noncitizen at the border (or immediately after border crossing) to judicial review regarding the merits of his asylum application. *Id.* at 138-39; *see also id.* at 117-18 ("In this case, however, respondent did not ask to be released. Instead, he sought entirely different relief: vacatur of his removal order and an order directing the Department to provide him with a new opportunity to apply for asylum and other relief from removal.") (cleaned up). *Thuraissigiam* simply does not apply to a noncitizen like Petitioner who was detained after residing within the United States for years and who is only challenging his detention.

These principles establish the uncontroversial proposition that due process applies to detained noncitizens; they do not determine what qualifies as "constitutionally adequate procedures." *Loudermill*, 470 U.S. at 541.  Typically, that question is answered by balancing three factors: (i) the private interest that will be affected by the official action; (ii) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (iii) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Government rejects any application of the *Mathews* factors to Petitioner's habeas petition.  Conceding that *Avila* answers only the statutory interpretation question of § 1225(b)(2)(A) and says nothing of the due process concerns that might arise from mandatory detention pursuant to that statute, the Government still insists that Petitioner's due process claim is foreclosed.  Relying on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), and *Demore v. Kim*, 538 U.S. 510 (2003) the Government claims that Petitioner cannot challenge his detention pending removal, only the removal itself.  The Court disagrees.

*Banyee* and *Demore* are distinguishable from the case at bar.  *See Jesus Alejandro G.A. v. Blanche*, Case No. 26-cv-1932 (LMP/ECW), 2026 WL 1383138 at *6-8 (D. Minn. May 18, 2026).  Neither involved the detention of unadmitted noncitizens under § 1225(b)(2)(A).  *Banyee* dealt with the detention of a former lawful permanent resident convicted of multiple crimes.  *Banyee*, 115 F.4th at 930.  Banyee's last conviction for

robbery with a dangerous weapon prompted federal authorities to begin deportation proceedings. *Id.* Because of his criminal convictions, Banyee was detained pursuant to § 1226(c)(1)(B) which required the Attorney General to detain "any alien who… is deportable by reason of having committed any offense covered in 1227(a)(2)(A)(ii), (A)(iii), or (B)." *Id.* Banyee challenged his year-long detention pending removal on due process grounds. While recognizing that "deciding what process is due ordinarily requires a form of interest balancing" *id.* at 933 (citing *Mathews v. Eldridge*), the Eighth Circuit ultimately rejected Banyee's due process argument without any analysis of the *Mathews* factors.

In reaching this conclusion, the Eighth Circuit relied heavily on the Supreme Court's decision in *Demore v. Kim*. *Demore*, like *Banyee*, involved a lawful permanent resident who was detained pursuant to § 1226(c) after multiple criminal convictions. The *Demore* Court found that the detainee was convicted "following the full procedural protections our criminal justice system offers." *Demore* 538 U.S. at 513. The Court further noted that congressional evidence established that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and "that one major cause of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceeding." *Id.* at 518. In light of these findings, the Court held that detention without an individualized bond hearing did not violate the detainee's due process rights.

Critical to the Supreme Court's holding in *Demore* was Congress's "justifiabl[e] concern[] that deportable criminal aliens who are not detained continue to engage in

crime and fail to appear for their removal hearings in large numbers." *Id*. at 513. In other words, detention was constitutionally permissible in *Demore* because it served the purpose of preventing criminal noncitizens from fleeing prior to removal and increased the chance that removal could be successfully accomplished. Further, any due process concerns were mitigated because the noncitizens at issue "became deportable under § 1226(c) only following criminal convictions that were secured following full procedural protections" that "reflect[ed] personal activity that Congress considered relevant to future dangerousness." *Id.* at 525 n.9.[5]

Given the similarities between *Demore* and *Banyee*, the Eighth Circuit in *Banyee* determined that it need not independently apply *Mathews* because "any balancing ha[d] already been done." *Banyee* 115 F.4th at 933. Both cases dealt with the same private interests: the right of a noncitizen to be free from detention pending deportation after criminal conviction. Both cases dealt with the same governmental interest: ensuring criminal noncitizens—which Congress found, based on express evidence, were particularly unlikely to reappear—would be present for their deportation proceeding.

---

[5] Likewise, the older precedent on which *Banyee* and *Demore* relied, including *Carlson v. Landon,* 342 U.S. 524 (1952) (detention of noncitizens participating in Communist activities) and *Reno v. Flores,* 507 U.S. 292 (1993) (detention of noncitizen juveniles who could not be released to parents, legal guardians, or certain other adult relatives), found detention without bond constitutional in part because of express legislative or administrative findings at the respective time periods regarding "the evils of Communist activity" rendering such noncitizens "a menace to the public interest," *Carlson*, 342 U.S. at 543, and the uniquely "difficult problems presented [with] arrests [of] unaccompanied alien juveniles," *Reno*, 507 U.S. at 315. "In both cases, the Government provided some justification for detention, albeit on a categorical or class-wide basis. No such class-wide findings exist here that would justify mandatory detention of every single unadmitted noncitizen." *Santillan Quiroz*, 2026 WL 1876709, at *17.

Both cases presented the same risk of erroneous deprivation, which was mitigated by a criminal conviction that reflected personal activity that Congress considered relevant to future dangerousness. Because the interests and risks in *Banyee* were identical to those in *Demore*, so too was the balance, and therefore the result.

Nearly every factor that led the courts to uphold the detentions in *Demore* and *Banyee* differs from the current case. Those detained pursuant to § 1225(b)(2)(A) need not have any criminal conviction or have done anything at all that may bear on their dangerousness or the assessment of whether they are a flight risk. The only determination required to detain a noncitizen pursuant to § 1225(b)(2)(A) is that they are an "applicant for admission" who is not "clearly and beyond a doubt entitled to be admitted." Detention is not limited to "a small segment of particularly dangerous individuals, say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, *including tourist visa violations*." *Zadvydas*, 533 U.S. at 691 (emphasis in original).

This is not to say that detention pursuant to § 1225(b)(2)(A) is always impermissible. It only highlights the difference in the liberty interest of a noncitizen convicted of serious crimes versus one who has no criminal record, and the subsequent difference in the governmental interest in detaining a noncitizen who has demonstrated that he has characteristics that Congress reasonably associates with a higher risk of danger or flight risk versus its interest in detaining all noncitizens solely on the basis that they are removeable, which "bears no relation" to their dangerousness. *Zadvydas*, 533 U.S. at 691-92.

In light of these differences, the Court concludes that neither *Demore* nor *Banyee* have "already done whatever balancing is necessary" for the particular type of detention at issue here.[6]  As a result, the Court turns to the balancing test "ordinarily" required to determine what process is due, *see Banyee*, 115 F.4th at 933, and considers the factors set forth in *Mathews v. Eldridge*, 424 U.S. at 335:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

### i.      Private Interest

The private interest Petitioner claims in this habeas petition is a liberty interest to be free from detention, which is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  Besides that general interest, Petitioner's prior release from immigration detention, lack of criminal history, and his compliance with all conditions of that release while petitioning for asylum create an interest in that continued liberty, at least without arbitrary revocation.

---

[6]      I recognize that other judges in this District have come to a different conclusion, *e.g.*, *Lugo-Solet v. Mullin*, No. 1:26-CV-52-ZMB, 2026 WL 1162233, at *2 (E.D. Mo. Apr. 29, 2026), and respectfully disagree with those conclusions.  United States District Court Judge Audrey G. Fleissig reached the opposite conclusion in *DAWIT ABRAHAM MEKONNEN, Petitioner, v. GARY STOLZER, Respondent.*, No. 1:26-CV-00122-AGF, 2026 WL 2029972 (E.D. Mo. July 14, 2026).  I agree with Judge Fleissig's legal analysis and adopt her reasoning from that case in this opinion.

"Courts have recognized the self-evident idea that an individual who has been released from custody to live a productive life in the community obtains a protected interest in their continued liberty." *Rios Moreno v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *8 (D. Minn. May 29, 2026) (collecting cases); *see also Muse v. Mullin*, No. 26-CV-4024-CJW-MAR, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) ("Here, petitioner acquired a liberty interest in release on his own recognizance when the government released him in 2023.  The government has now arbitrarily revoked that interest by detaining him without demonstrating danger or flight risk.").  "It is from this liberty interest that detention without an individualized bond hearing can become constitutionally impermissible, even if the detention has a theoretical end point." *Lopez-Campos* , 175 F.4th at 734.

This Court recognizes that "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522.  However, the recognition that Congress has more leeway to restrain the liberty interest of noncitizens than citizens does not extinguish a noncitizen's liberty interest in being free from imprisonment; such a holding would conflict with almost all Supreme Court precedent to consider this matter.  Nor does the Government's flexibility mean that the liberty interest of citizens cannot inform Court's opinion on what process is due.  *See Zadvydas*, 533 U.S. at 690 (applying principles relating to a citizen's liberty interest in being free from imprisonment and the associated due process concerns to noncitizens).

Relatedly, the liberty interest to be free from detention of a noncitizen who has engaged in criminal activity is different than one who has not.  The Government argues

that so long as detention is related to an ongoing removal proceeding, the individual liberty interest is the same between noncitizens subject to removal because of their serious criminal convictions and those subject to removal solely because they were not lawfully admitted.  This Court disagrees.  It is well established that "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man."  *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009).  And our nation has a long history of depriving those who have had the full protection of the criminal justice system due process rights in administrative proceedings which others are entitled to.  *See, e.g.*, *Hawker v. People of New York*, 170 U.S. 189, 196 (1898) (denying a doctor the right to contest the revocation of his medical license after a felony conviction because "the state is not seeking to further punish a criminal, but only to protect its citizens . . . .").  Unsurprisingly, when the Court upheld the detention in *Demore*, it went out of its way to repeatedly highlight that the detainee in that case was subject to mandatory detention only after the full protection of the criminal justice process.  Petitioner here has no criminal convictions.  There is no indication that Petitioner has had any formal—or even informal—adjudication to suggest he is a flight risk or dangerous.  Therefore, Petitioner's "most elemental liberty interest" is not diminished like the detainees in *Demore* and *Banyee*.

### ii.   Risk of Erroneous Deprivation

As noted above, Supreme Court precedent convinces this Court that the Government's ability to detain noncitizens during removal proceedings is not limitless and should be tied to a regulatory goal of either (1) ensuring appearance at a future

immigration proceeding or (2) preventing danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Lopez-Campos*, 175 F.4th at 732.  Here, there is a significant risk that Petitioner has been and will be erroneously deprived of his interest in remaining free from unnecessary detention.  Petitioner was given no opportunity to argue he was not a flight risk or dangerous.  There have been no specific congressional findings pertaining to unadmitted noncitizens writ large similar in kind to the findings regarding criminal noncitizens in *Demore.*

Petitioner has already been detained for thirty days, and there is no indication in the record that a decision regarding his asylum application is forthcoming or that removal is foreseeable in the interim.[7]  As the Supreme Court has held, if removal is "not reasonably foreseeable," habeas courts "should hold continued detention unreasonable and no longer authorized" and should order release "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700.

---

[7]      The Government contends that Petitioner's asylum-based argument does not provide a basis for *habeas corpus* relief because an "alien is to remain detained" while waiting for a "credible fear interview."  The Government argues that even if "an immigration officer determines following the credible fear interview that such fear is credible, 'the alien shall be detained for further consideration of the application for asylum.' " (citing 8 U.S.C. § 1225(b)(1)(B)(ii)).  The Government does not, however, explain whether Petitioner was detained because he was waiting for a credible fear interview or pending further consideration of his asylum application.  There is no indication that a decision on Petitioner's asylum application is imminent.  Regardless, the Court need not address any asylum-based arguments because it finds that Petitioner is entitled to an individualized bond hearing under the Due Process Clause.

But even "if removal is reasonably foreseeable," the Supreme Court has cautioned that habeas courts should still "consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Id.* The Government has not suggested that Petitioner has committed any crime, presented any other danger to society, or otherwise attempted to evade removal.[8]  Indeed, the Government has previously released Petitioner, leaving Petitioner to establish a life, family, and community ties in this country.  The Government has not suggested any change in circumstances prior to Petitioner's current detention.  In any event, an individualized bond hearing would ensure that detention is necessary to serve one or both of the regulatory goals sought to be served.

### iii.    Government's Interest and Burden of Additional Procedure

Although the Government certainly has an interest in ensuring the appearance of noncitizens at their immigration hearings and protecting the public from danger, it has not disputed that those interests would be adequately served by an individual bond hearing to assess whether Petitioner is a flight risk or dangerous.  Nor has the Government offered any argument or evidence that providing an individual hearing would impose a significant burden, certainly not one that outweighs Petitioner's liberty interest.  *See, e.g.*, *Lopez-Campos*, 175 F.4th at 735 (holding that due process requires that noncitizens like Petitioner who are "long-term law-abiding residents in the United States" should "have a forum to explain that their backgrounds and connections to their communities justify

---

[8]    The Government states that "it does not appear that Petitioner has any criminal record." ECF. No. 10 at 10.

release on bond while they undergo their removal proceedings"); *Barbosa da Cunha*, 175 F.4th at 95 (holding that "mandatory detention of noncitizens . . . who cannot be said, as a categorical matter, to pose a danger to the community or risk of flight[] for a substantial period of time would raise serious constitutional questions [where] the government has failed to explain how it would bear a reasonable relation to any legitimate, non-punitive purpose"); *Patel v. Arnott*, No. 6:26-CV-3207-MDH, 2026 WL 1091195, at *4 (W.D. Mo. Apr. 22, 2026) ("A bond hearing would not undermine immigration enforcement; it would ensure that detention is exercised lawfully and in accordance with the Constitution. Here, the Government's interest in detaining Petitioner without Due Process is minimal.").

In short, the Court holds that Petitioner's continued detention under § 1225 without a bond hearing violates the Due Process Clause, particularly considering Petitioner's pending asylum application, lack of criminal history, and compliance with all conditions of his prior release from immigration detention.  Therefore, the Court will grant the petition insofar as it seeks a prompt, individual bond hearing.  In light of this relief, the Court need not address Petitioner's other claims.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Edwar Yhosman Garcia Leal's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is **GRANTED in part, as follows:**

1.  By no later than **ten (10)** days from the date of this Order, the Government must provide Petitioner Edwar Yhosman Garcia Leal an individualized bond hearing before an immigration judge.

2.  If the Government does not provide Edwar Yhosman Garcia Leal with a bond hearing in accordance with this Order, the Government must immediately release Edwar Yhosman Garcia Leal from detention; and

3.  By no later than **5:00 p.m. on August 11, 2026,** the Government must provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order or, if no bond hearing was held, concerning the circumstances of Edwar Yhosman Garcia Leal's release from detention.

A separate Judgment shall accompany this Memorandum and Order.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of July, 2026.